IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| **Autoscribe Corporation** § | | |
| § | | |
| *Plaintiff*, § | | |
| § | | |
| v. § | **Civil Action No. _____** | |
| § | | |
| **Fortis Payment Systems, LLC** § | **JURY TRIAL DEMANDED** | |
| § | | |
| *Defendant.* § | | |
| § | | |
| § | | |

**PLAINTIFF'S ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Autoscribe Corporation ("Autoscribe" or "Plaintiff") hereby submits this Original Complaint for patent infringement against Defendant Fortis Payment Systems, LLC ("Fortis" or "Defendant") and alleges, based on its own personal knowledge with respect to its own actions and based upon information and belief with respect to all others' actions, as follows:

## I. THE PARTIES

1. Autoscribe is a Corporation organized under the laws of the state of Maryland with its principal place of business at 12276 San Jose Blvd, Suite 624, Jacksonville, FL 32223.

2. Defendant Fortis is a corporation organized under the laws of Delaware, with its headquarters at 43155 Main Street, Suite 2310C, Novi, Michigan 48375, and with a regular and established place of business at 6111 W Plano Parkway, Suite 2700, Plano, TX 75093. It may be served via its registered agent C T Corporation at 1999 Bryan St., Suite 900, Dallas, TX 75201.

## II. JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, including 35 U.S.C. § 271.

1

4. As discussed in greater detail below, Defendant has committed acts of patent infringement and/or has induced and/or contributed to acts of patent infringement by others in this judicial district, the State of Texas, and elsewhere in the United States, by making, using, offering for sale, selling, or importing various products or services that infringe Autoscribe's Asserted Patent (defined below).

5. As mentioned above, Defendant has a regular and established place of business in the District at 6111 W Plano Parkway, Suite 2700, Plano, Texas 75093. Defendant explains that "[f]rom our Texas office, we're here to guide you through your unique commerce journey and equip you with the right tools and capabilities for your industry. . . ."[1] This location is a physical place located in the District, and it is held out as a regular and established place of business of Defendant, including by listing this location on its website.[2] Defendant currently employs dozens of employees in the State, most of whom work from the Plano office. Defendant is also advertising several jobs for this location, including postings for a "ERP Experience Director" (the responsibilities of which include collaborating "with the internal sales team to schedule and conduct demos of Fortis payments functionality for potential customers") and a "Senior Underwriter" ("The primary responsibility of this role is to evaluate and render a decision on new high-risk merchant applications within Fortis' Credit/Underwriting policy to minimize monetary losses associated with financial, compliance, and fraud risks").[3]

6. Additionally, Defendant at least uses, offers to sell, or sells infringing products or services in the District (including through its presence and employees in the District), and has

---

[1] https://www.manta.com/c/m1rbkzz/fortis-payment-systems-llc-tx-office#reviews (last visited August 7, 2023).
[2] https://fortispay.com/ (last visited August 7, 2023).
[3] https://www.linkedin.com/jobs/fortis-jobs-worldwide?f_C=1285798%2C16206227&trk=top-card_top-card-primary-button-top-card-primary-cta&position=1&pageNum=0 (last visited August 7, 2023).

customers in the District.

7. The Court has personal jurisdiction over Defendant, in part, because Defendant has minimum contacts within the State of Texas; Defendant has purposefully availed itself of the privileges of conducting business in the State of Texas; Defendant regularly conducts business within the State of Texas; and Autoscribe's causes of action arise directly from Defendant's business contacts and other activities in the State of Texas, including by virtue of Defendant's infringement in the State of Texas. More specifically, Defendant is subject to the Court's general jurisdiction, in part, due to its continuous and systematic contacts with the State of Texas. Further, Defendant is subject to the Court's specific jurisdiction, in part, because Defendant has committed patent infringement and/or has induced and/or contributed to acts of infringement by others in the State of Texas and because Defendant has a place of business in the State of Texas such that assertion of personal jurisdiction is reasonable and fair.

8. Venue is proper in this judicial District under 28 U.S.C. § 1400(b) because Defendant has committed patent infringement and/or has induced and/or contributed to acts of infringement by others in the District and has a regular and established place of business in the District, as discussed above.

### III. BACKGROUND

9. Fraud in credit card and other financial transactions is a major problem, particularly in the online marketplace. Considerable resources are devoted to securing credit card and other account information provided to online merchants by payers. A single breach of security incident can compromise millions of credit card accounts, and such breaches are reported on a regular basis. As such, customers' financial data are sensitive in nature and are subject to strict regulations. Companies that fail to adequately protect customers' credit card data may face significant legal and regulatory consequences.

10. Autoscribe is a leading financial services company and payment processor, currently processing more than $2 billion in transactions annually and servicing thousands of financial institutions and corporate billers across the nation. As part of its mission, Autoscribe has invested significant resources and capital into developing new technologies to facilitate transactions and assist billers in meeting their compliance needs while minimizing costs and complexity.

11. Autoscribe has protected these technologies with a robust and growing patent portfolio.

12. On April 4, 2023, the United States Patent and Trademark Office ("USPTO") duly and legally issued United States Patent No. 11,620,621 ("the '621 Patent" or "the Asserted Patent"), titled "Enrolling a payer by a merchant server operated by or for the benefit of a payee and processing a payment from the payer by a secure server." The Asserted Patent is valid and enforceable.

13. The Asserted Patent is directed to "systems and methods for obtaining and using account information to process financial payments."

14. Autoscribe is the original applicant and the sole and exclusive owner of all rights, title, and interest in the Asserted Patent, including the sole and exclusive right to prosecute this action, to enforce the Asserted Patent against infringers, to collect damages for past, present and future infringement of the Asserted Patent, and to seek injunctive relief as appropriate under the law.

15. Plaintiff has complied with any marking requirements under 35 U.S.C. § 287 with regard to the Asserted Patent.

16. Defendant is a financial technology company that provides payment processing

services and solutions. Defendant processes billions of dollars in transactions annually, providing payment solutions to hospitality, chiropractic, restaurant, veterinary, medical, non-profit, retail, automotive, liquor, grocery, fitness, and e-commerce. It has multiple offices throughout the United States, including an office in Plano, Texas. It processes payments by credit cards, debit cards, ACH, and various other payment methods.

17. As discussed in greater detail below, Defendant provides processing solutions, including its "Embedded Payment" solutions, that are covered by the Asserted Patent.

18. Defendant competes directly against Autoscribe, including through its "Embedded Payment" solutions, causing Autoscribe to lose significant profits.

19. Accordingly, Defendant's infringement, as described below, has injured, and continues to injure Autoscribe.

### IV.  COUNT I: INFRINGEMENT OF THE ASSERTED PATENT

20. Autoscribe incorporates each of the allegations of paragraphs 1–19 above.

21. Defendant has directly infringed and continues to directly infringe the Asserted Patent by, for example, making, using, offering to sell, selling, and/or importing into the United States, without authority, products or services that practice one or more claims of the Asserted Patent.

22. Defendant is not licensed or otherwise authorized to make, use, offer for sale, sell or import any products or services that embody the inventions of the Asserted Patent in the United States.

23. Defendant has and continues to directly infringe one or more claims of the Asserted Patent, including, for example, claim 1, either literally or under the doctrine of equivalents, by performing every step of the claimed method in violation of 35 U.S.C. § 271.

24. Defendant's infringing services include, for example, the services Defendant

provides through its "Embedded Payment" solutions, as well as any other similar methods performed by Defendant (collectively, the "Infringing Methods").

25. For example, Representative Claim 1 of the Asserted Patent claims:

A method of processing a payment transaction from a payer to a payee, the method being performed by one or more secure servers, the method comprising:

> providing, by the one or more secure servers to a merchant server providing a webpage to a payer computing system used by the payer, an application programming interface (API) that:
>
> provides financial account registration and token retrieval functions that can be executed to process the payment transaction;
>
> provides access to the financial account registration and token retrieval functions to the merchant server;
>
> receives, from the merchant server via the API, at least one data element associated with the payer and a payment amount from the payer to the payee;
>
> authenticates the payee; and
>
> executes the financial account registration function, upon initiation by the merchant server, by:
>
>> generating a uniform resource locator (URL), for establishing a secure socket layer connection via the internet between the secure server and the payer computing system, the URL comprising either:
>>
>>> a dynamic URL generated by the secure server for the payer and the payee; or a static URL and a hypertext transport protocol (HTTP) parameter used by the secure server to identify the payer and the payee;
>>
>> establishing the secure socket layer connection, in response to an HTTP request received from the merchant server for the generated URL, between the secure server and the payer computing system within a window or frame that is displayed within the webpage provided by the merchant server;
>>
>> outputting instructions to the payer computing system, in response to the HTTP request for the generated URL, to render a financial account registration request form, within the window or frame that is displayed within the webpage provided by the merchant server,

> that provides functionality for the payer to provide sensitive financial account information associated with a financial account; and
>
> outputting instructions to the payer computing system, in response to the HTTP request for the generated URL, to encrypt the sensitive financial account information provided by the payer and transmit the encrypted financial account information to the secure server via the secure socket layer connection;
>
> receiving the sensitive financial account information provided by the payer via the secure socket layer connection;
>
> storing the sensitive financial account information in a secure storage location and performing each software process required to maintain compliance with one or more information security standards;
>
> executing a token retrieval function, upon initiation by the merchant server via the API, by:
>
>> providing a non-sensitive electronic data token representing the sensitive financial account information to the merchant server without providing the sensitive financial account information to the merchant server and without providing the non-sensitive electronic data token to the payer; and
>>
>> processing the payment transaction using the sensitive financial account information by generating and transmitting an electronic request requesting the payment amount from the financial account, obtaining the payment amount, and forwarding at least a portion of the payment amount to the payee.

26. Through its "Elements" product, Defendant performs a method of processing a payment transaction from a payer to a payee, the method being performed by one or more secure servers and meeting every element of Claim 1. The figure below is an excerpt from Defendant's documentation providing an overview of the purpose of the Payment API:[4]

---

[4] https://docs.fortis.tech/v/1_0_0.html#/rest/quick-start-guide/integration-options (last visited July 24, 2023).

## 2. Hosted Solutions

Fortis offers PA-DSSS compliant hosted solutions as a way for ISV partners to integrate with ease and security top of mind. Utilizing the Fortis Hosted Solutions removes the capturing and transmission of card holder details from the integrators infrastructure, thus reducing their PCI scope. Our hosted solutions payment forms can be incorporated into a website, email or text messaging. The most common industries that utilize the Fortis hosted solutions are E-commerce, Retail, MOTO, B2B

## Elements

Elements is a customizable payment interface that can be added to a website or back-office software to receive card, ACH and mobile wallet payments.

Elements can be used for the following types of applications:

- Donation pages
- Shopping cart plugins
- E-commerce websites
- Back Office software where card payments are keyed in
- Tokenization of customer payment details for recurring billing

27. Defendant provides, by the one or more secure servers to a merchant server providing a webpage to a payer computing system used by the payer, an application programming interface (API). This is shown by, *e.g.*, Defendant's inclusion of documentation for its "Elements" product in its "Fortis API" documentation page.[5]

28. It provides financial account registration and token retrieval functions that can be executed to process the payment transaction. This is shown by, *e.g.*, the functions described in the "Store multi use token for future use," "ISV Obtains Client_Token," and "Process Transaction" blocks of the "Elements" documentation:[6]

---

[5] https://docs.fortis.tech/v/1_0_0.html#/rest/elements/overview (last visited July 24, 2023).
[6] *Id.* at "Ticket intention" (last visited July 24, 2023).



29. It provides access to the financial account registration and token retrieval functions to the merchant server. This is shown by, *e.g.*, the "Server Requests" described in the "Elements" documentation:[7]

**Server Requests**

Create a `TransactionIntention` on your server with an amount and currency. Or create a `TicketIntention` on your server. If a transaction amount is not included in the `TransactionIntention`, Elements will render a field so the amount can be entered.

30. It receives, from the merchant server via the API, at least one data element associated with the payer and a payment amount from the payer to the payee. This is shown by, *e.g.*, the "key:value fields" or the "POST v1/element/transaction/intention" described in the

---
[7] *Id.* at "Server Requests" (last visited July 24, 2023).

"Elements" documentation:[8]



31.     It authenticates the payee. This is shown by, *e.g.*, the "unique ID" described in the

"Elements" documentation:[9]

---

[8] *Id.* at "Ticket Intention" (last visited July 24, 2023).
[9] *Id.* at "Add to your payment page" (last visited July 24, 2023).

```
Add to your payment page

Elements need a place to live on your payment page. Create an empty DOM node (container) with a unique ID in
your payment form and then pass this ID to Elements.

    <div id="payment">
      <!-- Elements will create input elements here -->
    </div>
    <script>
      var elements = new Commerce.elements('{{ client_token }}');
      elements.create({
        container: '#payment',
        theme: 'default'
      });
    </script>
```

        32.    It executes the financial account registration function, upon initiation by the merchant server, by:

        a.    (i) Generating a uniform resource locator (URL), for establishing a secure socket layer connection via the internet between the secure server and the payer computing system, the URL comprising either: a dynamic URL generated by the secure server for the payer and the payee; or a static URL and a hypertext transport protocol (HTTP) parameter used by the secure server to identify the payer and the payee. This is shown by, *e.g.*, the "iframe that securely sends payment information to Fortis over an HTTPS connection" described in the "Elements" documentation:[10]

---

[10] *Id.* at "Collect payment details" and "Set up" (last visited July 24, 2023).

## Collect payment details

You're ready to collect and charge payment information on the client. Elements is a set of pre-built UI components for collecting and validating card number, ZIP code, expiration date, and other fields.

An Element contains an iframe that securely sends the payment information to Fortis over an `HTTPS` connection. The checkout page address must also start with `https://` rather than `http://` for your integration to work.

## Set up

Elements is automatically available as a feature of Commerce.js. Include the Commerce.js script on your checkout page by adding it to the `head` of your HTML file. Always load Commerce.js directly from `js.sandbox.fortis.tech` (or `js.fortis.tech` for live/production) to remain PCI compliant. Do not include the script in a bundle or host a copy of it yourself.

```html
<head>
  <title>Checkout</title>
  <script src="https://js.sandbox.fortis.tech/commercejs-v1.0.0.min.js"></script>
</head>
```

    b. (ii) Establishing the secure socket layer connection, in response to an HTTP request received from the merchant server for the generated URL, between the secure server and the payer computing system within a window or frame that is displayed within the webpage provided by the merchant server. This is shown by, *e.g.*, the "iframe that securely sends payment information to Fortis over an HTTPS connection" described in the "Elements" documentation:[11]

---

[11] *Id.*

12

> **Collect payment details**
>
> You're ready to collect and charge payment information on the client. Elements is a set of pre-built UI components for collecting and validating card number, ZIP code, expiration date, and other fields.
>
> An Element contains an iframe that securely sends the payment information to Fortis over an `HTTPS` connection. The checkout page address must also start with `https://` rather than `http://` for your integration to work.
>
> **Set up**
>
> Elements is automatically available as a feature of Commerce.js. Include the Commerce.js script on your checkout page by adding it to the `head` of your HTML file. Always load Commerce.js directly from `js.sandbox.fortis.tech` (or `js.fortis.tech` for live/production) to remain PCI compliant. Do not include the script in a bundle or host a copy of it yourself.
>
> ```
> <head>
>   <title>Checkout</title>
>   <script src="https://js.sandbox.fortis.tech/commercejs-v1.0.0.min.js"></script>
> </head>
> ```

    c. (iii) Outputting instructions to the payer computing system, in response to the HTTP request for the generated URL, to render a financial account registration request form, within the window or frame that is displayed within the webpage provided by the merchant server, that provides functionality for the payer to provide sensitive financial account information associated with a financial account. This is shown by, *e.g.*, the "Collect payment details" section of the "Elements" documentation:[12]

---

[12] *Id.*

13

> **Collect payment details**
>
> You're ready to collect and charge payment information on the client. Elements is a set of pre-built UI components for collecting and validating card number, ZIP code, expiration date, and other fields.
>
> An Element contains an iframe that securely sends the payment information to Fortis over an HTTPS connection. The checkout page address must also start with `https://` rather than `http://` for your integration to work.

      d.   (iv) And outputting instructions to the payer computing system, in response to the HTTP request for the generated URL, to encrypt the sensitive financial account information provided by the payer and transmit the encrypted financial account information to the secure server via the secure socket layer connection. This is shown by, *e.g.*, the same portions of the "Elements" documentation discussed in the previous paragraph, which describes how "An Element contains an iframe that securely sends the payment information to Fortis over an HTTPS connection."[13]

    33.   Defendant receives the sensitive financial account information provided by the payer via the secure socket layer connection. This is shown by, *e.g.*, the same portions of the "Elements" documentation discussed in the previous paragraph.

    34.   Defendant stores the sensitive financial account information in a secure storage location and performs each software process required to maintain compliance with one or more information security standards. This is shown by, *e.g.*, the description of Defendant's "Security and Compliance" in its "Embedded Payments" page and the description of the "Elements Payment Page" in its "Integration Overview":[14]

---

[13] *Id.*

[14] https://fortispay.com/solutions/enable/embedded-payments/ (last visited July 24, 2023); https://docs.fortis.tech/v/1_0_0.html#/rest/quick-start-guide/integration-overview/elements-payments-page (last visited July 24, 2023).



35.     Defendant executes a token retrieval function, upon initiation by the merchant server via the API, by: providing a non-sensitive electronic data token representing the sensitive financial account information to the merchant server without providing the sensitive financial account information to the merchant server and without providing the non-sensitive electronic data token to the payer; and processing the payment transaction using the sensitive financial account information by generating and transmitting an electronic request requesting the payment amount from the financial account, obtaining the payment amount, and forwarding at least a portion of the payment amount to the payee. For example, the "token" described in the

"Elements" documentation shows "a non-sensitive electronic data token," and the "Transaction Receipt" section of the documentation shows that it processes a payment:[15]

```
This example demonstrates how to fetch the client token with JavaScript on the client-side:

(async () => {
  const response = await fetch('/transactionIntention');
  const { client_token } = await response.json();
  //Create an instance of Commerce.elements with the client secret.
})();
```

**Transaction Receipt**

On the actions `sale` `auth-only` `avs-only` `refund` after the transaction is completed, a receipt will be displayed with the details of the transaction, and if was charged or declined.

**Transaction Successful**
Thank you for your payment!

Fortispay WxWcml
line 2

| | |
|---|---|
| **Date** | 3/24/2022 |
| **Entry Method** | Keyed |
| **Transaction Type** | Sale |
| **Confirmation Number** | abc805 |
| **Account** | ****1115 MC |
| **Account Holder** | John Doe |
| **Total** | $22.99 |

---

[15] https://docs.fortis.tech/v/1_0_0.html#/rest/elements/overview (last visited July 24, 2023).

36. Defendant had actual knowledge of the Asserted Patent and the infringement of the same no later than the date of this Complaint.

37. Defendant has and continues to indirectly infringe one or more claims of the Asserted Patent by inducing and/or contributing to direct infringement of the Asserted Patent by customers, importers, sellers, resellers, and users of the Infringing Methods. The direct infringers include, for example, Everyware,[16] Celerant,[17] Billing Dynamix,[18] and Paddle Florida.[19]

38. Defendant has and continues to induce others to directly infringe, either literally or under the doctrine of equivalents, by, among other things, making, using, offering to sell, selling and/or importing into the United States, without authority, products or services that practice one or more claims of the Asserted Patent.

39. Defendant induced the infringement by others with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others infringe the Asserted Patent, but while at best, remaining willfully blind to the infringement.

40. As discussed in Paragraphs 20–35, above, Defendant advertises the Infringing Methods, publishes specifications and promotional literature encouraging customers to implement and incorporate the Infringing Methods into end user products, creates and/or distributes user manuals for the Infringing Methods that provide instructions and/or encourage infringing use, and offers support and/or technical assistances to its customers that provide instructions on and/or encourage infringing use.

41. Defendant encourages and facilitates its customers to infringe the Asserted Patent

---

[16] https://fortispay.com/info/fortis-and-everyware-partner-to-deliver-a-completely-integrated-payment-experience-across-transaction-types/ (last visited August 7, 2023).
[17] https://www.celerant.com/partner/fortis/ (last visited July 24, 2023).
[18] https://billingdynamix.com/billing-dynamix-and-fortispay/ (last visited July 24, 2023).
[19] https://www.paddleflorida.org/partnerships (last visited July 24, 2023).

by promoting the Infringing Methods, for example, providing documentation and stating in its documentation for its "Embedded Payment" solutions that "Elements is a customizable, secure, and embeddable UI component. This component can be implemented in many different types of applications, and is used for accepting payments and for tokenization" and by instructing merchants to implement Defendant's methods "in your payment form."[20]

42. Defendant's customers that incorporate the Infringing Methods into other products and services (*e.g.*, Everyware, Celerant, Billing Dynamix, and Paddle Florida) each directly infringe the Asserted Patent pursuant to Defendant's instructions and advertisements.

43. Additionally, Defendant has and continues to contribute to the direct infringement of others, either literally or under the doctrine of equivalents, by, among other things, offering to sell or selling within the within the United States, components of a patented device or an apparatus for use in practicing the claimed method, constituting a material part of the invention.

44. As discussed in Paragraphs 20-35, above, Defendant provides APIs and example code for the Infringing Methods that constitute a component of a patented device or an apparatus for use in practicing the claimed method.

45. Defendant does this knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use.

46. Defendant's customers that incorporate the APIs and example code into other products and services (*e.g.*, Everyware, Celerant, Billing Dynamix, and Paddle Florida) each directly infringe the Asserted Patent.

---

[20] https://docs.fortis.tech/v/1_0_0.html#/rest/elements/overview/collect-payment-details/add-to-your-payment-page (last visited August 7, 2023).

## V.  JURY DEMAND

47. Autoscribe hereby demands a trial by jury on all issues so triable.

## VI.  PRAYER FOR RELIEF

WHEREFORE, Autoscribe requests entry of judgment in its favor and against Defendant as follows:

a) A declaration that Defendant has directly infringed one or more claims of the Asserted Patent, either literally or under the doctrine of equivalents;

b) A declaration that Defendant has induced and/or contributed to infringement and/or is inducing and/or contributing to infringement of one or more claims of the Asserted Patent, either literally or under the doctrine of equivalents;

c) An award of damages pursuant to 35 U.S.C. § 284 adequate to compensate Autoscribe for Defendant's infringement of the Asserted Patent in an amount according to proof at trial (together with prejudgment and post-judgment interest), but no less than a reasonable royalty;

d) An award of costs and expenses pursuant to 35 U.S.C. § 284 or as otherwise permitted by law; and

e) Such other and further relief, whether legal, equitable, or otherwise, to which Autoscribe may be entitled or which this Court may order.

Dated: August 10, 2023

Respectfully submitted,

*/s/ Jason McManis*
Jason McManis
State Bar No.: 24088032
Colin Phillips
State Bar No.: 24105937
Chun Deng
State Bar No.: 24133178
AHMAD, ZAVITSANOS & MENSING, PLLC
1221 McKinney Street, Suite 2500
Houston, Texas 77010
(713) 655-1101
cphillips@azalaw.com
jmcmanis@azalaw.com
cdeng@azalaw.com

Andrea L. Fair
State Bar No.: 24078488
Ward, Smith, & Hill, PLLC
1507 Bill Owens Parkway
Longview, Texas 75604
(903) 757-6400
(903) 757-2323 (fax)
andrea@wsfirm.com

*Attorneys for Autoscribe Corporation*