IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| Autoscribe Corporation, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 2:23-cv-00364-JRG |
| Fortis Payment Systems, LLC, | § § | Jury Trial Demanded |
| Defendant. | § § § | |

**DEFENDANT FORTIS PAYMENT SYSTEMS, LLC'S OPPOSED MOTION TO
TRANSFER TO THE EASTERN DISTRICT OF MICHIGAN**

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................. 1
FACTUAL BACKGROUND .......................................................................................................... 1
LEGAL STANDARD ...................................................................................................................... 3
ARGUMENT ................................................................................................................................... 5
    I.    Autoscribe could have sued Fortis in the EDMI. ..................................................... 5
    II.    The EDMI is clearly more convenient than the EDTX. .......................................... 5
        A.    The private interest factors clearly favor transfer to the EDMI. ................. 6
            (1)    Sources of proof are more accessible from the EDMI. .................... 6
            (2)    The availability of compulsory process favors the EDMI. ............. 7
            (3)    The cost of attendance for willing witnesses favors transfer to the EDMI. ................................................................................. 8
            (4)    Practical issues of expedient adjudication are neutral. ................... 9
        B.    The public interest factors clearly favor transfer. ..................................... 10
            (1)    The EDMI has a greater local interest in the outcome of this case. ..................................................................................... 10
            (2)    The remaining public interest factors are neutral. ........................ 11
CONCLUSION ............................................................................................................................. 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Acer Am. Corp.*,
   626 F.3d 1252 (Fed. Cir. 2010), *cert. denied*, 131 S. Ct. 2447 (2011) .................................6, 7

*In re DISH Network L.L.C.*,
   No. 2021-182, 2021 WL 4911981 (Fed. Cir. Oct. 21, 2021) ........................................................8

*In re EMC Corp.*,
   677 F.3d 1351 (Fed. Cir. 2012) ..................................................................................................3

*In re Genetech, Inc.*,
   566 F.3d 1338 (Fed. Cir. 2009) ........................................................................................ *passim*

*In re Hoffmann-La Roche Inc.*,
   587 F.3d 1333 (Fed. Cir. 2009) ................................................................................4, 7, 10, 11

*In re Microsoft Corp.*,
   630 F.3d 1361 (Fed. Cir. 2011) ..................................................................................................5

*In re Nintendo*,
   589 F.3d 1194 (Fed. Cir. 2009) ..................................................................................................4

*Nuance Commc'ns, Inc. v. Abbyy Software House*,
   626 F.3d 1222 (Fed. Cir. 2010) ..................................................................................................5

*Parus Holdings Inc. v. LG Elecs. Inc.*,
   No. 19-cv-00432, 2020 WL 4905809 (W.D. Tex. Aug. 20, 2020) ..........................................10

*In re Planned Parenthood Fed. of Am., Inc.*,
   52 F.4th 625 (5th Cir. 2022) ...............................................................................................3, 4, 6

*SCVNGR, Inc. v. DailyGobble, Inc.*,
   No. 6:15-CV-493-JRG-KNM, 2015 WL 13501487 (E.D. Tex. Oct. 30, 2015) ........................7

*In re TikTok, Inc.*
   (5th Cir. Oct. 31, 2023) ..........................................................................................................5, 6

*In re TS Tech USA Corp.*,
   551 F.3d 1315 (Fed. Cir. 2008) ..............................................................................................3, 4

*Uniloc USA Inc. v. Box, Inc.*,
   No. 1:17-CV-754-LY, 2018 WL 2729202 (W.D. Tex. June 6, 2018) .......................................8

*In re Volkswagen AG*,
    371 F.3d 201 (5th Cir. 2004) (*Volkswagen I*) .................................................................. *passim*

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) (*Volkswagen II*) ................................................................. *passim*

**Statutes**

28 U.S.C. § 1400(b) ........................................................................................................................5

28 U.S.C. § 1404(a) ....................................................................................................................3, 9

## INTRODUCTION

Defendant, Forits Payment Systems, LLC ("Fortis"), moves to transfer this case to the Eastern District of Michigan ("EDMI")—a venue with far more connections to the facts of this case and far more convenient than the Eastern District of Texas ("EDTX").

Plaintiff Autoscribe Corporation ("Autoscribe") knowingly abandoned its home states of Maryland and Florida to sue Fortis in Texas despite knowing that Fortis' headquarters is in Novi, Michigan, which offers the most convenient access to sources of proof. Indeed, it is where the accused products and services were designed and developed. As a result, the EDMI is home to the greatest number of willing (and potentially unwilling) witnesses, and it provides the lowest cost of attendance for witnesses. Critically, it has a greater localized interest in the outcome of this case.

None of the accused products and services were designed or developed in Marshall, Plano, or anywhere else in Texas. Ex. A, Declaration of Ashley Usher ("Usher Decl."), ¶¶ 7-8, 11-12. None of the potential party or non-party witnesses for Fortis are located in Texas. *Id.*, ¶¶ 8, 14. Simply put, proceeding in this District is neither convenient nor related to the events at the center of this action.

For these reasons and those that follow, this case should be transferred to the EDMI.

## FACTUAL BACKGROUND

Autoscribe filed this action against Fortis in the Marshall Division on August 13, 2023. *See generally* Dkt. No. 1. The Original Complaint alleges that Fortis' "Elements" payment processing platform infringes U.S. Patent No. 11,620,621 (the "Asserted Patent"). *See id.*, ¶¶ 12–46; *see also* Ex. B, Asserted Patent.

Fortis is a Delaware corporation with its principal place of business headquartered in Novi, Michigan. *Id.*, ¶ 6. Nearly all corporate and technical activities take place at its headquarters in Novi, Michigan. *Id.* Novi is the primary site for approximately 31 Fortis employees and Fortis'

engineering, development, product design functions, and marketing operations.  *Id*., ¶ 7.  Novi is where Fortis' technical development team that oversaw the engineering, development, and design of the accused Elements platform is located.  *Id*.  Fortis' proprietary source code related to the Elements payment platform was also developed in Novi by employees with the requisite security clearance.  *Id*., ¶ 8.  Specifically, Fortis' Vice President of Architecture and Development Operations, Jeff Jarchow, and Fortis' Senior Vice President of Product and Innovation (who is also Fortis' former Chief Technology Officer), Kevin Shamoun, would be witnesses with relevant information concerning the technical development of the Elements platform, and both reside in Novi.  *Id*.

Employees with decision making authority pertaining to marketing, such as Fortis' co-founder and Executive Vice President, Timothy Nafso, also reside in Novi.  *Id*., ¶ 9.  Fortis' sales operations are primarily based in Vero Beach, Florida, but Fortis' executive with relevant knowledge of sales for the accused product, Fortis' Chief Revenue Officer, Ron Dichter, regularly travels to Novi from Vero Beach for Fortis business.  *Id*.  Mr. Dichter does not routinely travel to Texas for business.  *Id*.  Additionally, the "internal sales team" Autoscribe references in its Complaint does not interact with anyone in Fortis' Plano office; rather, the team of employees are based in either Vero Beach, Florida or in California.  *Id.*, ¶ 10.  These employees report to a Vero Beach-based manager and, eventually, to Mr. Dichter.  *Id*.  Fortis' Vero Beach office also includes tech support and premier support teams, which handle all customers inquiries relating to the Elements system.  *Id*.

Although Autoscribe filed its suit in the Marshall Division, Fortis' only tie to the EDTX is an office located in Plano.  Fortis opened its Plano office in January 2022 after acquiring EpicPay International, LLC., and it is one of Fortis' smaller offices.  The Plano office employees work in

the Risk, Customer Support, and Development departments—none of which interact with the Elements platform at issue in this matter. *Id.*, ¶ 11. Put differently, *no one* in Fortis' Plano office—including the employees working in product development—has been, is, or will be involved with any aspect of the accused application, the Elements platform. *Id.*, ¶12. Nor would Fortis' Plano office employees have the necessary credentials to access the source code, or cause to access documents, pertaining to Fortis' sales or marketing activities. *Id.* Autoscribe's claim that Fortis "is also advertising several jobs for this location (Plano)" is a partial truth at best. Fortis is advertising the referenced job postings to be filled in either its Plano office, Vero Beach, Florida, office, or remotely, and Fortis has not yet hired anyone for this position. *Id.*, ¶ 13.

Autoscribe states it is a Maryland corporation with its principal place of business located in Jacksonville, Florida. *See* Dkt 1, at ¶ 1. As of August 2023, the named inventors appear to reside in Florida, Virginia, and Maryland. *See* Ex. C, Named Inventors LinkedIn Profiles; *see also* '621 Patent. None of the named inventors reside in Texas.

## **LEGAL STANDARD**

A case may be transferred "to any other district or division" where the action could have been brought as the interests of convenience and justice so clearly require. 28 U.S.C. § 1404(a); *see also In re Planned Parenthood Fed. of Am., Inc.*, 52 F.4th 625, 629 (5th Cir. 2022). Fifth Circuit law governs this Court's determination of whether to transfer, as the Federal Circuit applies the law of the appropriate regional circuit to venue issues in patent cases. *See In re EMC Corp.*, 677 F.3d 1351, 1354 (Fed. Cir. 2012); *see also In re Genetech, Inc.*, 566 F.3d 1338, 1341–42 (Fed. Cir. 2009); *see also In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008).

The threshold inquiry for § 1404(a) eligibility is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re*

3

*Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (*Volkswagen I*).  Once that threshold is met, the court determines whether transfer would promote the interest of justice and/or the convenience of the parties and witnesses.  *See In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (*Volkswagen II*); *see also In re Planned Parenthood*, 52 F.4th at 629; *see also In re Nintendo*, 589 F.3d 1194, 1200 (Fed. Cir. 2009) (applying Fifth Circuit law); *see also In re TS Tech*, 551 F.3d 1315, 1319 (Fed. Cir. 2008) (applying Fifth Circuit law).  Under Fifth Circuit precedent, courts analyze public and private factors relating to the convenience of the parties and witnesses—as well as the interests of particular venues in hearing the case after first asking "whether the case 'might have been brought' in the destination venue." *Planned Parenthood*, 52 F.4th at 630.

The four private factors include:  (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial easy, expeditious, and inexpensive. *Nintendo*, 589 F.3d at 1198; *TS Tech*, 551 F.3d at 1319; *Volkswagen I*, 371 F.3d at 203; *Planned Parenthood*, 52 F.4th at 630.  The four public factors include:  (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the governing law; and (4) the avoidance of unnecessary problems of conflict of laws. *Nintendo*, 589 F.3d at 1198; *TS Tech*, 551 F.3d at 1319; *Volkswagen I*, 371 F.3d at 203; *Planned Parenthood*, 52 F.4th at 630.  While generally applicable, the private and public factors "are not necessarily exhaustive or exclusive," and no single factor is dispositive. *Volkswagen II*, 545 F.3d at 314–15.  "[I]n a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer." *Nintendo*, 589 F.3d at 1198; *TS Tech*, 551 F.3d at 1319; *In re Genentech, Inc.*, 566 F.3d 1338 (Fed. Cir. 2009); *In re Hoffmann-La Roche*

*Inc.*, 587 F.3d 1333 (Fed. Cir. 2009). "No factor is of dispositive weight, and [the Fifth Circuit] has cautioned against a 'raw counting of the factors' that 'weigh[s] each the same.'" *In re TikTok, Inc.*, at *3 (5th Cir. Oct. 31, 2023) (quoting *In re Radmax, Ltd.*, 720 F.3d 285, 290 n.8 (5th Cir. 2013)).

As for a plaintiff's choice of forum, a court should not "honor connections to a preferred forum made in anticipation of litigation and for the likely purpose to make that forum appear convenient." *In re Microsoft Corp.,* 630 F.3d 1361, 1364 (Fed. Cir. 2011).

## ARGUMENT

### I.   Autoscribe could have sued Fortis in the EDMI.

Autoscribe could have brought this action in the EDMI because jurisdiction and venue are both proper in the EDMI. Fortis' primary operations occur at its headquarters in the EDMI. *See* Ex. A, Usher Decl., ¶ 6; *see also* 28 U.S.C. § 1400(b). Fortis' prominent presence in the EDMI means that it has the necessary contacts with Michigan such that exercising personal jurisdiction over it would be fair and reasonable. *See e.g.*, *Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1231 (Fed. Cir. 2010).

With Fortis' headquarters being in Novi, Michigan, venue is also proper in the EDMI. *See* 28 U.S.C. § 1400(b) (venue is proper in the district "where the defendant resides" or "has a regular and established place of business"). Thus, this action could have—and should have—been brought in the EDMI. *See* 28 U.S.C. § 1400(b).

### II.   The EDMI is clearly more convenient than the EDTX.

This case has no connection to Marshall. Tellingly, the Complaint only mentions Marshall **once**—in the caption. *See* Dkt. No. 1. Any perceived connection to Marshall was manufactured solely by Autoscribe's choice of venue, which is not a factor in the transfer analysis. *See*

5

*Volkswagen II*, 545 F.3d at 314 n.10.  Fortis does not maintain an office in Marshall, and no relevant operations take place at the Plano office.  Ex. A, Usher Decl., ¶ 11.  Similarly, there is no indication that any of Autoscribe's evidence will come from anywhere within Texas—let alone from the EDTX.  *See e.g.*, Dkt. No. 1 at ¶¶ 4, 12–33.  The EDMI, on the other hand, is where Fortis maintains its headquarters and is the location for virtually all of Fortis' relevant information and likely witnesses.  *See* Ex. A, Usher Decl., ¶¶ 6-8.  In short, there is no factual basis to keep this case in the EDTX.

> **A.      The private interest factors clearly favor transfer to the EDMI.**
>
> **(1)      Sources of proof are more accessible from the EDMI.**

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer.  Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location."  *In re Genetech, Inc.*, 566 F.3d at 1345 (quoting *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 330 (E.D.N.Y. 2006)) (applying Fifth Circuit law)); *see also In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010) (applying Fifth Circuit law), *cert. denied*, 131 S. Ct. 2447 (2011).  This factor favors transfer where key electronic evidence is "not equally accessible" in the transferor forum. *In re TikTok*, No. 23-50575, 2023 WL 7147263, at *3-4 (5th Cir. Oct. 31, 2023).

In this case, that location is in the EDMI.  The accused Fortis technology was developed in Novi, Michigan.  *See* Ex. A, Usher Decl., ¶ 7; *see also Planned Parenthood*, 52 F.4th at 630–31 (stating that "[t]he location of evidence bears much more strongly on the transfer analysis when, as in *Volkswagen*, the evidence is physical in nature").  Most of the materials related to the development of Fortis' products and services were created—and are maintained—in Novi.  *See id.*, ¶ 7-8.  Any relevant source code was developed by those with access in Novi. *Id.*, ¶ 8.  No one

6

with security clearance to access the source code resides in Texas. *Id*. Because Fortis' decision-making witnesses, equipment, or documents relevant to the claims and defenses are in or nearest to Novi, access to sources of proof with respect to the accused products are more conveniently located in the EDMI. *See id.*, ¶¶ 8-9, 14; *see also In re Acer*, 626 F.3d at 1256 ("sources of proof factor also weighs significantly in favor of transfer" where no likely sources of proof are located in the Marshall Division).

To the extent that Autoscribe possesses relevant documents or information, such documents or information is likely located at Autoscribe's principal place of business in Jacksonville, Florida, making the EDMI at least as convenient as the EDTX for Autoscribe. *See* Dkt. No. 1, ¶ 1.

This factor strongly favors transfer to the EDMI because the EDMI is clearly more convenient for the production of relevant sources of proof. *See SCVNGR, Inc. v. DailyGobble, Inc.*, No. 6:15-CV-493-JRG-KNM, 2015 WL 13501487, at *3 (E.D. Tex. Oct. 30, 2015) ("Because Relevant alleges sources of proof more accessible to the Southern District of New York and LevelUp fails to allege sources of proof more accessible to the Eastern District of Texas, this factor favors transfer.").

### (2) The availability of compulsory process favors the EDMI.

The availability of the compulsory process weighs in favor of transfer where there are more third-party witnesses residing in the transferee district. *See In re Volkswagen II*, 545 F.3d at 316. This factor weighs most heavily in favor of transfer when a transferee venue is said to have "absolute subpoena power." *Id.* "Absolute subpoena power" is subpoena power for both depositions and trial. *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009).

The only anticipated potential third-party witnesses associated with the accused Elements

7

system would be former Fortis employees who assisted in the design and development of the software features. *See* Ex. A, Usher Decl., ¶ 8. Any such former employees would have worked in, or were known to reside near Novi. *See id.* None of the Asserted Patent's inventors are based in Texas, making the compulsory process unavailable to the EDTX. *See* Ex. C, Named Inventor LinkedIn Profiles; *see also* Ex. B, Asserted Patent.

Whether these witnesses will ultimately require the use of the Court's subpoena power is irrelevant. "The focus of this factor is not whether a witness *may* become an unwilling witness, or whether a court *may* need to invoke its subpoena power; rather, the focus is on the *availability* of process to secure attendance of a witness if need be." *Uniloc USA Inc. v. Box, Inc.*, No. 1:17-CV-754-LY, 2018 WL 2729202, at *3 (W.D. Tex. June 6, 2018) (emphasis in original) (citing *Volkswagen*, 545 F.3d at 316). "[W]hen there is no indication that a non-party witness is willing, the witness is presumed to be unwilling and considered under the compulsory process factor." *In re DISH Network L.L.C.*, No. 2021-182, 2021 WL 4911981, at *3 (Fed. Cir. Oct. 21, 2021) (citation omitted).

With the EDMI likely possessing absolute subpoena power over most of the anticipated potential third-party witnesses, this factor favors the EDMI.

        **(3)    The cost of attendance for willing witnesses favors transfer to the EDMI.**

Given the case's significant ties to the EDMI, the cost of attendance for willing witnesses will be lower for these witnesses upon transfer making this factor weigh in favor of transfer. It is an "obvious conclusion that it is more convenient for witnesses to testify at home and that additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment, family, and community." *Volkswagen II*, 545 F.3d at 317 (internal citation

8

and punctuation omitted).  "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Id.* (quoting *Volkswagen I*, 371 F.3d at 204–05 (finding "the task of scheduling fact witnesses so as to minimize the time when they are removed from their regular work or home responsibilities gets increasingly difficult and complicated when the travel time from their home or work site to the court facility is five or six hours one-way as opposed to 30 minutes or an hour")).

For Fortis' employees working in the Novi area, it is unquestionable that trial in the EDMI would be more convenient to them than traveling to Marshall.  *See* Ex. A, Usher Decl., ¶ 14.  If Fortis witnesses were required to travel to Marshall, flights to Dallas from Detroit Metro Airport would cost approximately $300, and witnesses would then have to rent cars and drive over two hours to Marshall. *See* Ex. D, Flight details from Novi to DFW Airport; *see also* Ex. E, Car rental details from DFW Airport; *see also* Ex. F, Map from DFW Airport to Marshall.  Hotels for these willing witnesses would cost between approximately $100 and $150 per night.  *See* Ex. G, Hotel cost information.  All of this travel would be time away from Fortis witnesses' families.  *See Volkswagen II*, 545 F.3d at 317.  Fortis is also not aware of any Autoscribe witnesses who work or reside in or around EDTX—let alone in Marshall—and any Autoscribe witnesses would have to also fly to Dallas, rent cars, drive to Marshall, and stay in hotels.

Under these circumstances, this factor weighs in favor of the EDMI as it clearly offers a significant reduction in costs for willing witnesses over the EDTX.

### (4)     Practical issues of expedient adjudication are neutral.

When examining practical problems, courts consider judicial economy.  *Volkswagen*, 566 F.3d at 1351.  Fortis filed this Motion very early in the litigation, before entry of a case schedule and before discovery opened.  *See* Dkt. No. 15.  The parties have not exchanged infringement or

9

invalidity contentions, or engaged in any significant proceedings such claim construction, discovery, or litigation on the merits. *See id.*; *see also Parus Holdings Inc. v. LG Elecs. Inc.*, No. 19-cv-00432, 2020 WL 4905809, at *6-*7 (W.D. Tex. Aug. 20, 2020) ("[T]his case is in its early stages, meaning any increase in judicial economy from the Court's experience in these early stages of litigation is likely to be limited.").

**B.      The public interest factors clearly favor transfer.**

**(1)      The EDMI has a greater local interest in the outcome of this case.**

The EDMI's interest in this matter is self-evident. *See In re Hoffmann-La Roche*, 587 F.3d at 1338. "[I]f there are significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighed in that venue's favor." *Id.* As stated above, Fortis was founded in Novi, and Novi remains the location of Fortis' headquarters. *See supra* II.A.1. The primary design and development operations for the accused products and services (and the employees responsible for these operations) occurred—and still occur—in Novi. Ex. A, Usher Decl., ¶ 7. In addition, several potential, relevant technical witnesses—Jeff Jarchow and Kevin Shamoun—work and reside in or around Novi. *Id.*, ¶ 8. These witnesses are part of Fortis' Information Technology department, which was responsible for developing the Elements system, and each reside in and work in EDMI. *Id.*

Fortis has 25 total employees working in sales for the Elements platform. *Id.* ¶ 10. Every one of these salespeople reside in Florida or California. *Id.* Fortis' Chief Operating Officer and Chief Financial Officer, Ron Dichter, resides in Vero Beach, Florida and regularly travels to Novi. *Id.*, ¶ 9. Moreover, all Fortis employees involved in customer service for the Elements system reside in and work in Florida. *Id.*, ¶ 10. Fortis' marketing team is entirely remote outside of its key decision maker, the head of marketing, Timothy Nafso, who offices in Novi. *Id.*, ¶ 9. As such,

10

"the cause of action calls into question the work and reputation of several individuals residing in or near that district who presumably conduct business in that community," and a localized interest in the EDMI exists. *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009).

Conversely, the Plano office only opened in 2022 and is one of Fortis' smaller locations. Ex. A, Usher Decl., ¶ 11. None of the Plano office's employees interact with the Fortis product accused in this case. *Id.*, ¶ 11. None of the accused features were developed in Plano, Plano office employees do not sell the Elements system, the Plano office does not resolve customer inquiries regarding the Elements system, and none of Fortis' executives reside in Texas. *Id.*, ¶ 12. Meaning, no one from the Plano office would be a custodian for documents or information pertaining to source code, design or development, finance, or marketing. *Id.* Indeed, Autoscribe's alleged sole connection between the Elements system and Plano is a Fortis job posting for an "ERP Experience Director," however, this position *is not specific to Plano* and can be filled in Florida or remotely. *Id.*, ¶ 13.

Given the EDMI's close connection to Fortis and that Plano—much less Marshall—has no cognizable interest in this matter, the EDMI has a far greater interest in the outcome of this case than the EDTX. This factor weighs in favor of transfer.

### (2) The remaining public interest factors are neutral.

The remaining public interest factors—court congestion (or time to trial), the familiarity of the forum with the governing law, and the avoidance of unnecessary problems of conflict of laws—are neutral. Court congestion, or the time to trial, is the most speculative factor and is routinely considered to be neutral. *See Genentech*, 566 F.3d at 1347. Moreover, there should be no problems associated with the EDMI's familiarity with the governing law or any conflict of laws given Autoscribe's dispute arises entirely under patent law. *See Volkswagen I*, 371 F.3d at 204.

## CONCLUSION

The EDMI is a far more convenient venue for this dispute than the EDTX because: (i) the sources of proof are located in the EDMI; (ii) the majority of likely fact witnesses reside or work in the EDMI; and (iii) it would be inconvenient and more expensive for the parties' and any willing witnesses to travel to Marshall compared to the EDMI.  Accordingly, all of the public and private factors either strongly favor transfer or are neutral, and not one factor comes close to supporting Autoscribe's choice of venue.  Therefore, for the convenience of the parties and witnesses, and to promote the interests of justice, Fortis respectfully requests that the Court grant this Motion and order that this case be transferred to the Detroit Division of the Eastern District of Michigan.

Dated: December 1, 2023

Respectfully submitted,

/s/ C. Erik Hawes
C. Erik Hawes
Texas Bar No. 24042543
*erik.hawes@morganlewis.com*
Cullen G. Pick
Texas Bar No. 24098260
*cullen.pick@morganlewis.com*
**MORGAN, LEWIS & BOCKIUS LLP**
1000 Louisiana Street, Suite 4000
Houston, Texas 77002
Telephone: (713) 890-5000
Facsimile: (713) 890-5001

Elizabeth M. Chiaviello
Texas Bar No. 24088913
*elizabeth.chiaviello@morganlewis.com*
**MORGAN, LEWIS & BOCKIUS, LLP**
1717 Main Street, Suite 3200
Dallas, Texas 75201
(214) 466-4000 Telephone
(713) 466-4001 Facsimile

***Attorneys for Defendant Fortis Payment Systems, LLC***

## CERTIFICATE OF CONFERENCE

I certify that I discussed the relief requested herein with Autoscribe's counsel and that Autoscribe is opposed to this Motion.

*/s/ Elizabeth M. Chiaviello*
Elizabeth M. Chiaviello

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on December 1, 2023, a true and correct copy of the foregoing response was served on all counsel of record who have appeared in this case via the Court's CM/ECF system.

*/s/ C. Erik Hawes*
C. Erik Hawes